**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. _____

JILL ROTHE, an individual,

      Plaintiff.

v.

CATERPILLAR, INC., A Delaware corporation,

      Defendant.

_____

**COMPLAINT AND REQUEST FOR JURY TRIAL**
_____

      Jill Rothe, through her counsel, Thomas Mitchiner, Mitchiner Law LLC, and Steven L. Murray, Murray Law LLC, submits her Complaint and Request for Jury Trial, asserting claims against the Defendant, Caterpillar, Inc.

      This action is an employment discrimination case. Ms. Rothe alleges Defendant intentionally discriminatory discriminated against her in employment, based on sex and disability, and retaliated against her for engaging in protected activity in violation of Title VII of the Civil Rights act of 1964, 42 U.S.C. § 2000e et. seq. [Title VII] and the Americans with Disability Act, as Amended by the ADA Amendments Act of 2008, 42 U.S.C. § 12101 et. seq. [ADA].

**I. PARTIES**

1.      Jill Rothe [Rothe] is a female and resident of Colorado.

2.      Caterpillar, Inc. [Caterpillar] is a Delaware corporation operating in Colorado.

3.      Rothe resides in Colorado. Most of the claims giving rise to this action occurred in Colorado, Illinois, or in Australia.

4.      Rothe performed work for Defendant in Colorado, within the judicial district of this Court.

5.      Caterpillar conducts business within the judicial district of this Court.

6.      Caterpillar employs over 15 persons.

## II.      JURISDICTION AND VENUE

7.      Jurisdiction is proper under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, 2000e-5 and 2000e-5(f)(1)(3), *as amended,* by the Civil Rights Act of 1991, 42 U.S.C. § 1981a (a) (1), (b) (1)-(4), (c), (d) (1) (2) and the Americans with Disabilities Act, *as amended*, 42 U.S.C. § 12117 [all statutes are collectively referenced as "Title VII" and "ADA"].

8.      Rothe was an employee of Caterpillar as defined by Title VII and the ADA and Caterpillar was an employer as defined by Title VII and the ADA.

9.      This Court also has jurisdiction under 28 U.S.C. § 1331.

10.     Venue is proper in this Court under 28 U.S.C. § 1391(b) (c), because many of the events that give rise to this claim occurred in Colorado or Illinois.

## III.      ADMINISTRATIVE PROCEDURES

11.     Before filing this action, Rothe timely, properly, and lawfully exhausted all required administrative procedures and remedies.

12.     Rothe filed a timely charge of unlawful sex, and disability discrimination and retaliation with the United States Equal Employment Opportunity Commission [EEOC]. [EEOC Charge No. 541-2020-01822].

13.     On February 24, 2021, the EEOC mailed a Notice of Right to Sue letter to Rothe.

14.     This action is timely filed because it is filed within ninety days of February 24, 2021, the date Rothe received the Notice of Right to sue letter issued by the EEOC.

### IV.     NATURE OF THE CASE

15.     This action seeks legal and equitable relief for Defendant's intentional and discrimination and retaliation against Rothe, acts in violation of Title VII and ADA.

### V.  GENERAL ALLEGATIONS

16.     Rothe began her tenure with Caterpillar on August 28, 2006 as a Corporate Intern.

17.     In 2007, Rothe was sexually assaulted by a coworker, Andy Diaz [Diaz], at a Caterpillar work function.

18.     Because of the assault, Rothe suffers from post-traumatic stress disorder [PTSD].

19.     From February 2014 until March 2018, Rothe worked for Caterpillar in Singapore as a Marketing Support Representative III and Regional Insurance Manager.

20.     In Rothe's final review for 2017, Caterpillar rated her as exceeding expectations. Her supervisor at the time told her she "bearly missed superior."

21.     On January 1, 2018, Caterpillar promoted Rothe to a position of Program Manager in Peoria, IL.

22.     In March 2018, Rothe moved to Peoria, Illinois to cover Dealers across Latin America.

23.     Douglas Wright [Wright] was Rothe's direct supervisor in the Program Manager position was

24.     Wright was based out of Perth, Australia.

25.     Rothe speaks fluent Spanish.

26.     The Program Manager position required a person that could speak Spanish.

27.     Wright's predecessor specifically hired Rothe for the position because of her language skills.

28.     Rothe's focus area were dealers in Latin America.

29.     In the Program Manager position, Rothe had to work many Program Consultants.  Program Consultants are a salary grade below hers.

30.     In March 2018, on her first work trip for the new role, Rothe was in Mexico. Three other members of her team were on that trip, including Jason Huser [Huser].

31.     While on a break from the week-long meetings, Rothe saw Diaz in the back of the room laughing with Huser. She had to excuse herself from most of that afternoon due to her PTSD causing her to hyperventilate. She later found out from Huser that he and Diaz were best friends back in Peoria.

32.     Rothe struggled to work with Huser professionally due to his lack of understanding of Dealership Operations, but also personally because his best friend sexually assaulted her in 2007.

33.     Huser bullied and harassed Rothe, and he made sexist comments to her.

34.     Rothe reported Huser's actions to her supervisor and to Human Resources. She asked, as the senior position on the team, to work with a different Consultant, but Defendant required her to work with Huser.

35.     Until the end of Rothe's employment, Huser, with Caterpilllar's knowledge, continued to bully and harass her, and make sexist comments to her.

36.     Caterpillar also required Rothe to take Huser to lunch and be friendly with him.

37.     After Rothe complained about discrimination to her supervisors in August 2018, Caterpillar took the Brazil territory out of her focus area.

38.     Despite requests from the field team in Brazil, as well as peers in Panama, that Rothe stay on as their Representative, Caterpillar gave the Brazil support role to a male employee that does not speak Spanish nor Portuguese.

39.     Rothe was the only person on the team asked to change territories so expediently (in less than a week) and was then forced to help the new representative succeed, providing contacts, travel support, translation assistance, and general Q&A for months after the transition.

40.     In Rothe's final performance review for 2018, Caterpillar rated her as meeting expectations.

41.     Even though Rothe met her goals for the year and performed better than her peers, she received the lowest monetary raise (IC factor of .8%) possible without requiring action for a Performance Improvement Plan.

42.     The only feedback Rothe was ever given to improving her performance was to "take others along on the journey" and have lunch with the Consultants, which meant she was directly being asked to retrigger her PTSD.

43.     Rothe became pregnant in August of 2018 after a miscarriage in July of 2018.

44.     Because she was pregnant, Rothe was unable to travel to her focus territories in Latin America.

45.     Rothe's doctors limited her travel because of her previous two pregnancies. Rothe performed significantly above average despite being unable to travel.

46.     In January 2019, Rothe's husband received a job offer in Denver, CO.

47.     Rothe asked Wright if she could transfer to a remote working position because her husband had received a job offer in Denver, CO.

48.     To assist Caterpillar in making its determination, Rothe provided it with a five-page business case analysis showing that working remotely would not have a negative impact on business and her location would have a positive impact because of larger airport and shorter flight times.

49.     Wright denied Rothe's request to work remotely.

50.     Wright denied the request even though Rothe worked with several other employees that were not based in Peoria. Most of Rothe's coworkers in her position worked around the world.

51.     One of Rothe's co-workers was based out of Texas, and another was based out of Toronto, Canada, and another in Panama, Panama. These individuals were not in Rothe's protected classes under Title VII and the ADA.

52.     One alleged reason for denying Rothe's request to work remotely was because Defendant, without her knowledge, placed on an informal performance improvement plan.

53.     Rothe had no knowledge of the alleged informal performance improvement plan until she filed a claim with the EEOC, and therefore could not address any deficiencies identified in the informal performance improvement plan.

54.     Wright, her direct Supervisor, denied the request even though his supervisor, Chet Egge [Egge], did not see any reasons why Rothe could not work remotely.

55.     In denying Rothe's request to work remotely, Caterpillar repeatedly asked Rothe about her plans for childcare.

56.     Rothe started applying for positions in the Caterpillar organization, outside of Global Aftermarket Solutions Division [GASD], in October 2018 to get away from the harassment.

57.     Rothe applied to one position which was approved by both Wright and his supervisor, Eric Jordan, for her to apply; however, after she applied, they would not write a letter in support of her.

58.     From February 2019 through August 2019, Rothe applied to 13 more positions in the Caterpillar organization, both inside and outside of the GASD.

59.     One of these positions was a position that Rothe had been successful in previously. This would have been a demotion.

60.     Rothe was approached before the position was posted and asked if she would apply. She applied for this position at the request of her former supervisor in the position who was the current supervisor of the position. The supervisor told he wanted to hire her, but he could not offer her the job was because she must have pissed someone off. This role was offered to her direct peer, Lisa Peiffer, who also worked for Doug Wright. Lisa was not pregnant.

61.     Caterpillar only selected Rothe to be interviewed for six positions.

62.     Caterpillar did not offer Rothe the opportunity to serve in any of the positions for which applied.

63.     A reason why Rothe did not receive any of the positions she interviewed for was because Caterpillar was relying on the recommendations of Wright.

64.     Rothe was denied the last position in August 2019.

65.     On March 7, 2019, in a meeting with Wright, Rothe requested that Caterpillar provide her with a flexible work arrangement leading up to her estimated due date of May 20, 2019.

66.     Rothe asked for eight weeks of a flexible work schedule.

67.     Wright informed Rothe that Caterpillar expected her water to break at her desk. Human Resources and Egge were present in the room and confirmed this expectation.

68.     Caterpillar also intimated that. Rothe would need to choose between having her position and having her husband present for the birth of her child.

69.     On March 13, 2019, Caterpillar offered Rothe temporary flexibility for six weeks, during which time she could work from home as needed to balance the demands associated with work and her family relocation.

70.     Caterpillar did not grant Rothe her full request.

71.     The flexible work schedule would end on Wednesday May 1, 2019, and on that date, Caterpillar expected Rothe to be at work in Peoria, IL.

72.     In April 2019, Rothe contacted Caterpillar's Disability Case Coordinator because her physician in Denver advised her that she could no longer travel.

73.     Rothe went on paid Disability Leave on May 1, 2019, and then continued to Paid Maternity Leave on May 21, 2019, to July 2, 2019.

74.     From July 2, 2019, through the first week of September 2019, Rothe used a combination of four weeks of paid Parental Leave, her paid vacation time and unpaid parental leave in conjunction with Family Medical Leave Act leave.

75.     During this time, Rothe continued to apply for new positions within Caterpillar.

76.     During this time, Rothe also received calls and messages from the Brazil team asking for clarification on work related matters.

77.     Holly Stevens, Rothe's coworker in Houston, had also become pregnant during this time. Her coverage territory included Colorado. The two had worked out a plan where Stevens could cover Rothe's maternity leave from Houston, and Rothe could cover Stevens' maternity leave from Colorado. Defendant denied approval of this arrangement.

78.     While Rothe was on maternatiy leave no person covered her territory.

79.     Rothe returned to work in Peoria on September 5, 2019.

80.     On September 10, 2019, Rothe submitted her two weeks' notice of resignation to Caterpillar.

81.     Rothe's last day would be September 24, 2019.

82.     Caterpillar acted intentionally in discriminating and retaliating against Rothe and violating Title VII and the ADA.

83.     Caterpillar's discriminatory and retaliatory actions have caused Rothe to suffer economic losses, including loss of wages and salary, benefits, monetary losses, retirement contributions, and other monetary losses.

84.     Caterpillar's discriminatory and retaliatory actions have caused Rothe to suffer emotional pain, suffering, inconvenience, mental anguish, humiliation, loss of enjoyment of life, future pecuniary losses, and other non-pecuniary losses.

85.     In taking the discriminatory and retaliatory actions against Rothe, Caterpillar acted willfully, with malice or reckless indifference to the rights of Rothe, entitling her to an award of punitive damages.

## VI.  CLAIMS FOR RELIEF

### FIRST CLAIM

### [Sex Discrimination – Title VII - Promote or Transfer]

86.     Rothe incorporates and restates all allegations asserted as though incorporated.

87.     This claim is for discrimination on the basis of sex under Title VII.

88.     Rothe, as a female, is in a protected class under Title VII.

89.     Rothe satisfactorily performed all her duties.

90.     Rothe applied to several positions within Caterpillar from February 2019 through August 2019.

91.     Rothe applied for the transfers, in part because Caterpillar required her to work with the best friend of the individual that assaulted her.

92.     Rothe was qualified to serve in all the positions, including all the transfers, for which she applied in the Caterpillar organization.

93.     Caterpillar discriminated against Rothe by preventing her transfer to positions she was qualified for based on her managers subjective evaluations of her.

94.     After Rothe's rejection, Caterpillar continued to seek applicants for the positions with Rothe's qualifications.

95.     Caterpillar's denial of the transfers was unwarranted and discriminatory.

96.     By the conduct described above, Caterpillar intentionally deprived Rothe of the same rights and working conditions, as the male employees of Caterpillar, in the

performance, enjoyment, continuation, and all the benefits and privileges of her employment relationship with Caterpillar, in violation of Title VII.

97.     Caterpillar engaged in direct, continual, increasing, and intentional sex discrimination in taking adverse unlawful employment practices against Rothe because of her protected under Title VII.

## SECOND CLAIM

### [Pregnancy Discrimination – PDA/Title VII].

98.     Rothe incorporates and restates all allegations asserted as though incorporated.

99.     This claim is asserted pursuant to the Pregnancy Discrimination Act of 1978 [PDA], which amended Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., as amended. [Title VII].

100.    Title VII forbids a covered employer from discriminating against or discharging "any individual with respect to ... terms, conditions, or privileges of employment, because of such individual's ... sex. 42 U.S.C. Section 2000e–2(a)(1).

101.    Also, Title VII prohibits a covered employer from limiting, segregating, or classifying any employee in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect her status as an employee, because of such individual's sex. 42 U.S.C. Section 2000e–2(a)(2).

102.    The first clause of the PDA specifies that Title VII's term "because of sex" includes "because of . . . pregnancy, childbirth, or related medical conditions." 42 U.S.C. Section 2000e(k).

103.   The second clause of the PDA provides that "women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes ... as other persons not so affected but similar in their ability or inability to work...." 42 U.S.C. Section 2000e(k).

104.   At the time Defendant engaged in its discriminatory actions against Rothe, including but not limited to her constructive discharge, Rothe was a member of the PDA/Title VII protected class.

105.   Rothe was a member of the PDA/Title VII protected class because Rothe: (1) was/had been pregnant; (2) on many occasions, requested a reasonable accommodation and was denied by the Defendant; and (3) was pregnant with her third child.

106.   Defendant was aware of all the reasons Rothe was a member of the PDA/Title VII protected class.

107.   The Defendant discriminated against Rothe, based on her membership in the PDA/Title VII protected class: (1) with respect to her compensation, terms, conditions, or privileges of employment, because of her sex and pregnancy, including childbirth related medical conditions; and/or (2) by limiting, segregating, or classifying Rothe in a way, which would deprive, or tend to deprive, Rothe of employment opportunities, or otherwise adversely affect her status as an employee, because of her sex and pregnancy.

108.   The Defendant discriminated against Rothe, based on her membership in the PDA/Title VII protected class, by refusing reasonable accommodations and constructively discharging her.

109.   Rothe was qualified for her position of employment, and she was adequately performing the duties of her position.

110.   Defendant's treatment of Rothe constitutes intentional, unlawful sexual discrimination, in violation of 42 U.S.C. Sections 2000e-2(a)(1)(2), and 42 U.S.C. Section 1981a (a)(1), (b)(1)(2)(3)(D), and (d)(1)(2).

## THIRD CLAIM

### [Disability Discrimination – ADA – Promote or Transfer]

111.   Rothe incorporates and restates all allegations asserted as though incorporated.

112.   This claim is for discrimination on the basis of disability under the ADA.

113.   Rothe, as a disabled individual, is in a protected class under ADA.

114.   Rothe suffers from PTSD.

115.   Rothe's PTSD substantially impacts major life activities such as working.

116.   At the time, Rothe was pregnant which is a recognized disability under the ADA.

117.   Rothe satisfactorily performed all her duties.

118.   Rothe applied to several positions within Caterpillar from February 2019 through August 2019.

119.   Rothe applied for the transfers, in part because Caterpillar required her to work with the best friend of the individual that assaulted her, exasperating her PTSD.

120.   Rothe was qualified to serve in all the positions, including all the transfers, for which she applied in the Caterpillar organization.

121.     Caterpillar discriminated against Rothe by preventing her transfer to positions she was qualified for based on her managers subjective evaluations of her.

122.     After Rothe's rejection Caterpillar continued to seek applicants for the positions with Rothe's qualifications.

123.     Caterpillar's denial of the transfers was unwarranted and discriminatory.

124.     By the conduct described above, Caterpillar intentionally deprived Rothe of the same rights and working conditions, as the male employees of Caterpillar, in the performance, enjoyment, continuation, and all the benefits and privileges of her employment relationship with Caterpillar, in violation of ADA.

125.     Caterpillar engaged in direct, continual, increasing, and intentional disability discrimination in taking adverse unlawful employment practices against Rothe because of her protected under the ADA.

## FOURTH CLAIM

### [Retaliation – Title VII]

126.     Rothe incorporates and restates all allegations asserted as though incorporated.

127.     The claim is for unlawful retaliation in violation of Title VII, 42 U.S.C. § 2000e-3.

128.     Under Title VII, Caterpillar was specifically prohibited from unlawful retaliation and discrimination against Rothe because she engaged in EEO activities protected by Title VII. 42 U.S.C. Section 2000e-3(a).

129.    Caterpillar engaged in retaliation against Rothe, by taking materially adverse actions against her, because of participation in protected activities under Title VII.

130.    Rothe participated in protected Title VII activities by complaining of discrimination based on sex.

131.    Rothe's protected activities included but were not limited to

a.    Informing Defendant that Huser was best friends with the person that assaulted her.

b.    Asking to be transferred so that she did not have to work with the best friend of the person that sexual assaulted her.

c.    Informing Human Resources that her managers were treating her differently than other employees in not allowing her to work remotely.

132.    Caterpillar knew of Rothe's protected Title VII activities.

133.    Caterpillar, with knowledge of Rothe's protected activities, engaged in a purposeful campaign and pattern of materially adverse actions against her, which increased in severity and resulted in her unwarranted constructive discharge from employment.

134.    Rothe was qualified for the position she held when constructively discharged, and she performed her duties satisfactorily throughout her employment with Caterpillar.

135.    Caterpillar's constructive discharge of Rothe's employment was unwarranted and retaliatory.

136.    Caterpillar's refusal to allow Rothe to transfer to another position was unwarranted and retaliatory.

137.    A causal connection exists between Rothe's protected activities and the Caterpillar's unlawful materially adverse employment actions against her.

138.    There is a sufficient temporal proximity between Rothe's protected activity and her termination from employment.

139.    Rothe's protected activities covered the period of January 2019 – September 2019.

140.    Caterpillar engaged in unlawful, direct, intentional, adverse, retaliatory, and discriminatory employment actions prohibited by Title VII against Rothe because of – but for her protected Title VII activities as described.

141.    This intentional unlawful retaliation was created and perpetuated, and/or tolerated by Caterpillar's officials, managers, and employees.

142.    Caterpillar's treatment of Rothe constitutes unlawful and intentional retaliation and discrimination in violation of 42 U.S.C. § 2000e-3(a) and violating 42 U.S.C. § 1981a (a)(1), (5)(2)(3)(D), (d)(1)(2).

## **FIFTH CLAIM**

### **[Hostile Work Environment - Sex]**

143.    Rothe incorporates and restates all allegations asserted as though incorporated.

144.    Title VII prohibits sex discrimination and harassment in the form of a hostile work environment, based on sex.  42 U.S.C. Sections 2000e-2(a)(1).

145.    Caterpillar, in consideration of all the facts, in a cumulative manner, intentionally created, tolerated, and perpetuated a hostile and abusive work environment, based upon sex, against Rothe.

146.    Caterpillar's conduct and comments directed at Rothe subjected her to materially adverse conduct which was unwelcome and offensive.

147.    Caterpillar's conduct and comments directed at Rothe subjected her to materially adverse conduct which: (1) was sufficiently severe and/or pervasive as to adversely alter the terms, conditions, and privileges of Rothe's employment; (2) created an abusive working environment for Rothe, involving discriminatory intimidation, ridicule, and insult, causing her emotional harm; and (3) was sexual in nature, and/or specifically and solely directed at Rothe, because of her Title VII protected class.

148.    Caterpillar condoned the sexual harassment and hostile environment of Rothe by refusing to transfer Rothe, away from working with the best friend of the individual that sexual assaulted Rothe.

149.    Caterpillar is liable for subjecting Rothe to the sexually hostile work environment claim because Human Resources knew of the harassment and her request to transfer and the reasons for her request, but Caterpillar required Rothe to work with the individual and take him to lunch, and the harassment resulted in Rothe's adverse tangible employment action, her inability to transfer to a new position and her ultimate constructive discharge.

150.    In addition to, or in the alternative to the contentions in the above paragraph, Caterpillar is liable for subjecting Rothe to the sexually hostile work

environment because Rothe was subjected to sexual harassment by co-workers and Caterpillar's supervisors and managers knew or should have known of all the materially adverse conduct in issue.

151.   Caterpillar failed to: (1) stop the materially adverse conduct in issue; and (2) implement reasonably prompt and appropriate corrective action.

152.   In the alternative, meaning even if Rothe did not suffer a tangible employment action, Caterpillar is liable for the hostile work environment.

153.   At all times, Caterpillar knew of the sexual harassment directed at Rothe.

154.   Caterpillar did not exercise reasonable care to prevent and promptly correct the sexual harassing behavior.

155.   Rothe acted reasonably in taking advantage of the preventative and/or corrective opportunities provided to her by Caterpillar and acted reasonably to avoid harm.

156.   Each successive episode of Caterpillar's cumulative conduct against Rothe, constituting the hostile work environment, had its predecessors, and the impact of the separate incidents accumulated such that the unlawful work environment created, exceeded the sum of any individual episode.

157.   Caterpillar's treatment of Rothe constitutes: (1) an intentional, unlawful, hostile work environment, based on sex, in violation of 42 U.S.C. Sections 2000e-2(a) (1) (2); and (2) intentional, unlawful discriminatory practices in violation of 42 U.S.C. Section 1981a (a) (1), (b) (2) (3), (d) (1) (2).

**SIXTH CLAIM**

**[Hostile Work Environment – ADA]**

158.    Rothe incorporates and restates all allegations asserted as though incorporated herein.

159.    The ADA prohibits sex discrimination and harassment in the form of a hostile work environment, based on disability.

160.    Caterpillar, in consideration of all the facts, in a cumulative manner, intentionally created, tolerated, and perpetuated a hostile and abusive work environment, based upon disability, against Rothe.

161.    Caterpillar's conduct and comments directed at Rothe subjected her to materially adverse conduct which was unwelcome and offensive.

162.    Caterpillar's conduct and comments directed at Rothe subjected her to materially adverse conduct which: (1) was sufficiently severe and/or pervasive as to adversely alter the terms, conditions, and privileges of Rothe's employment; (2) created an abusive working environment for Rothe, involving discriminatory intimidation, ridicule, and insult, causing her emotional harm; and (3) was about her disability, and/or specifically and solely directed at Rothe, because of her ADA protected class.

163.    Caterpillar condoned the disability harassment and hostile environment of Rothe by refusing to transfer Rothe from working with the best friend of the individual that sexual assaulted Rothe.

164.    In addition, Caterpillar's treatment of Rothe when she was pregnant constituted a hostile work environment.

165.    Caterpillar is liable for subjecting Rothe to the hostile work environment based on her disability because Human Resources knew of the harassment and her request to transfer and the reasons for her request, but Caterpillar required Rothe to work with the individual and take him to lunch, and the harassment resulted in Rothe's adverse tangible employment action, her inability to transfer to a new position and her ultimate constructive discharge.

166.    In addition to, or in the alternative to the contentions in the above paragraph, Caterpillar is liable for subjecting Rothe to the hostile work environment because based on disability, Rothe was subjected to disability harassment by co-workers and Caterpillar's supervisors and managers knew or should have known of all the materially adverse conduct in issue.

167.    Caterpillar failed to: (1) stop the materially adverse conduct in issue; and (2) implement reasonably prompt and appropriate corrective action.

168.    In the alternative, meaning even if Rothe did not suffer a tangible employment action, Caterpillar is liable for the hostile work environment.

169.    At all times, Caterpillar knew of the disability harassment directed at Rothe.

170.    Caterpillar did not exercise reasonable care to prevent and promptly correct the disability harassing behavior.

171.    Rothe acted reasonably in taking advantage of the preventative and/or corrective opportunities provided to her by Caterpillar and acted reasonably to avoid harm.

172.    Each successive episode of Caterpillar's cumulative conduct against Rothe, constituting the hostile work environment, had its predecessors, and the impact of the separate incidents accumulated such that the unlawful work environment created, exceeded the sum of any individual episode.

173.    Caterpillar's treatment of Rothe constitutes: (1) an intentional, unlawful, hostile work environment, based on disability; and (2) intentional, unlawful discriminatory practices in violation of 42 U.S.C. Section 1981a (a) (1), (b) (2) (3), (d) (1) (2).

## VII.   REQUEST FOR RELIEF

WHEREFORE, Plaintiff, Jill Rothe, respectfully requests this Court to enter judgment in Jill Rothe's favor and against Caterpillar on all claims and to award these remedies:

(a)    To enter a judgment for Rothe and against Caterpillar, finding Caterpillar's actions constitute unlawful intentional discrimination on the bases of sex in violation of Title VII.

(b)    To enter a judgment for Rothe and against Caterpillar, finding Caterpillar's actions constitute unlawful intentional discrimination on the bases of disability in violation of the ADA.

(c)    To enter a judgment for Rothe and against Caterpillar, finding Caterpillar's actions constitute unlawful, intentional retaliation in violation of Title VII.

(d)    To enter a judgment for Rothe and against Caterpillar, finding Caterpillar's actions constitute a hostile work environment in violation of the Title VII and the ADA.

(e)     To enter a judgment for Rothe and against Caterpillar, finding Caterpillar's actions constitute a willful violation of the ADA and Title VII.

(f)     To award Rothe the remedies of damages for back pay, restored benefits, accommodations, actual monetary damages, loss of wages, salary, retirement contributions, all loss of income, and all loss of monetary damages to which she is entitled.

(g)     To award Rothe compensatory damages for emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, future pecuniary losses, and other non-pecuniary losses, and all loss of compensatory damages to which she is entitled.

(h)     To award Rothe punitive damages.

(i)     To award Rothe attorney fees and costs.

(j)     To award Rothe pre-judgment and post-judgment interest at the appropriate rate provided by law.

(k)     To direct Caterpillar to take such affirmative relief steps as are necessary to ensure that the effects of Caterpillar's unlawful employment practices are eliminated and do not continue to affect Rothe's employment opportunities.

(l)     Order Defendant to reinstate Rothe to employment or in lieu of reinstatement, award Rothe front pay.

(m)     To award Rothe all other legal and equitable relief, to which Rothe is entitled under any law, this Court deems just, equitable, and proper.

**JURY TRIAL REQUEST**

Under Fed.R.Civ.P. 38 (a)(b)(c), Title VII, 42 U.S.C. § 1981a(c)(1), and all laws providing for a right to trial by jury, Rothe seeks a jury trial of all claims and issues.

Dated: May 24, 2021.


Respectfully submitted,


Mitchiner Law, LLC

/s/Thomas H. Mitchiner
Mitchiner Law, LLC
1888 N. Sherman St. Suite 200
Denver, CO 80203
Telephone: 720.538.0371
Email: tmitchiner@mitchinerlawllc.com


Murray Law, LLC

/s/ Steven L. Murray
Murray Law, LLC
1888 Sherman Street, Suite 200
Denver, CO 80203
Telephone: (303) 396-9952
E-mail: steven@smurraylaw.com

*Attorneys for Plaintiff Jill Rothe*

Plaintiff's Address:

6180 South Paris Street, Greenwood Village, CO 80111